UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
MARGARITA FERNANDEZ,

        Plaintiff,

        -against-

NEW YORK HEALTH CARE, INC.,

        Defendant.
------------------------------------------------------------x

19-CV-11575 (OTW)

**OPINION & ORDER**

**ONA T. WANG**, **United States Magistrate Judge:**

Plaintiff brings this action against New York Health Care, Inc. ("NYHC") in accordance with the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for alleged failure to pay overtime at the statutory rate, unpaid overtime, and failure to provide accurate wage statements. (ECF 1 ¶¶ 29-45). Plaintiff and NYHC reached a settlement and now seek Court approval of their proposed settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). All parties have consented to my jurisdiction in accordance with 28 U.S.C. § 636(c). (ECF 14). For the reasons below, the Court **DENIES** without prejudice the request to approve the settlement agreement.

**I.**    **Background**

Plaintiff was employed by NYHC as a home health aide for elderly patients from October 2013 to January 2018. (ECF 1 ¶¶ 22-23). She routinely worked more than 40 hours per week, but was not paid the appropriate overtime rate, nor for all of the overtime hours she had worked. (*Id*. ¶¶ 25-27). Plaintiff alleges that, beginning in September 2017, approximately 3 hours per week were not paid and that this habitual non-payment lasted until January 2018. (*Id*.

1

¶ 27). Additionally, Plaintiff alleges she was not provided with accurate wage statements. (*Id*. ¶¶ 41-43).

Plaintiff filed her complaint on December 18, 2019. (*Id*.)

II.     **Discussion**

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

   a.  **Range of Recovery**

Plaintiff alleges a maximum recovery against NYHC under FLSA and NYLL to be approximately $2,034 – 3,200 ($1,017 - $1,600 for outstanding wages plus $1,017 - $1,600 in liquidated damages). (ECF 15 at 2). The proposed settlement amount is $7,500. (*Id*.; ECF 15-1 at 3). Of the total settlement amount, Plaintiff would receive $2,500 and Plaintiff's counsel would then take $5,000 in fees and costs. (*Id*.) The Plaintiff's settlement amount thus represents

approximately 78% to more than 100% of Plaintiff's alleged maximum damages range and is greater than the alleged amount of unpaid wages. The Court finds this amount reasonable.

### b. Burden and Risks of Litigation

Settlement enables the parties to avoid the burden and expense of preparing for trial. The parties acknowledge that a significant dispute present in this case – namely, that NYHC contends it paid all wages owed to Plaintiff – presents them with risks were they to proceed with litigation. (ECF 1 at 1-2). The parties also represent that this settlement will allow them to avoid additional expenses during litigation, which in this case would likely cost more than the maximum amount Plaintiff may be owed. (*Id*. at 2).

### c. Arm's Length Negotiation

The parties represent that the settlement was a product of extensive negotiations and there is no evidence to the contrary. (*Id*. at 2-3).

### d. Risk of Fraud or Collusion

There is nothing in the record to suggest that fraud or collusion played a role in the settlement. Further, Plaintiff ceased employment with Defendants prior to the start of this litigation, diminishing potential concern that Plaintiff may have been coerced into the settlement by her employer. (*Id*. at 3).

### e. Additional Factors

Even though the release is appropriately limited to claims up to the date the agreement was executed, the release is overly broad and essentially operates as a general release. (ECF 15-1 at 4-5). Instead of cabining the release's scope to the wage-and-hour claims raised in this case, the proposed release is as follows:

5.     In return for the consideration described above, Plaintiff unconditionally releases and forever discharges Defendant, its agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, which against Defendant, its heirs, executors, administrators, agents, successors, and assigns, ever had, may now have or hereafter can, shall or may have, arising under any federal, state or local, wage-hour, or labor laws and/or regulations, or contract from the beginning of time to the date this Agreement is executed by the Parties, including, but not limited to: all claims under The Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; Article 6 of the New York Labor Law or the labor laws of any other state; the Equal Pay Act, 29 U.S.C. § 206; the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*; .; any amendments to the statutes referred to herein; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees relating to any such alleged violation; alleged unpaid wages, salary, or overtime compensation; employee classification; exempt classification; "at-will" classification; and any claims relating to procurement of customers, sub-agents, business, finder's fees, or any other asserted basis for additional remuneration or other rewards; and any other federal, state or local law relating to employee wages and hours; all claims alleging breach of promise, breach of contract or implied contract; fraud; misrepresentation; fraudulent inducement; promissory estoppel; unjust enrichment; quantum meruit; conversion; defamation; or otherwise arising under any common law theory or in tort, contract or quasi-contract, whether in law or equity; all claims for fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA; all claims for payment of income and employment taxes.

. . .

9.     This Agreement will be deemed binding and effective immediately upon its execution by the Plaintiff; provided, however, that in accordance with the Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. § 626, as amended), Plaintiff's waiver of ADEA claims under this Agreement is subject to the following: Plaintiff may consider the terms of her waiver of claims under the ADEA for twenty-one (21) days before signing it and may consult legal counsel if she so desires. Plaintiff may revoke her waiver of claims under the ADEA within seven (7) days of the day she executes this Agreement. Plaintiff's waiver of claims under the ADEA will not become effective until the eighth (8th) day following her signing of this Agreement. Plaintiff may revoke her waiver of ADEA claims under this Agreement by delivering written notice of her revocation, via

> e-mail and overnight mail, before the end of the seventh (7th) day following her signing of this Agreement to: Sari Kolatch, Esq., Cohen Tauber Spievack & Wagner P.C., 420 Lexington Avenue, Suite 2400, New York, New York 10170, email: skolatch@ctswlaw.com. If Plaintiff does not revoke this Agreement, it shall become effective eight (8) days after Plaintiff has signed it. If the last day of the revocation period is Saturday, Sunday or legal holiday in New York, then the revocation period shall not expire until the following day which is not a Saturday, Sunday or legal holiday. Plaintiff further understands that if she does not revoke the ADEA waiver in this Agreement within seven (7) days after signing this Agreement, her waiver of ADEA claims will be final, binding, enforceable, and irrevocable.

(*Id*. at 3-5). Releases may not include claims "that have no relationship whatsoever to wage-and-hour issues" and may not cover claims that were never raised by Plaintiff in the case. *Cheeks*, 796 F.3d at 206; *see also Rojas v. Bronx Moon LLC*, No. 17-cv-5825 (KMK), 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting a release that included all FLSA claims); *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-cv-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("[A]ny release provision must be limited to the claims at issue in this action."). The proposed release includes, for example, claims brought under ERISA, the Equal Pay Act, and others. Accordingly, the settlement cannot be approved with this provision.

With the exception of the release provision, the agreement lacks certain other objectionable provisions that courts have found fatal in other proposed FLSA settlements. The proposed settlement agreement contains no confidentiality provision and has already been filed in the public record. *See Thallapaka v. Sheridan Hotel Associates LLC*, No. 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (finding "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements). Nor does the agreement contain a non-disparagement provision. *See Martinez v. Gulluoglu LLC*, 15-CV-2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (finding non-disparagement provisions generally contravene the FLSA's purpose).

The Court finds that, given the particular facts and potential damages in this case, the attorneys' fees and costs award of $5,000 is reasonable. The proposed amount of $5,000 is also less than the total recorded fees and costs submitted by Plaintiff's counsel.[1] (ECF 15-3).

### III.  Conclusion

For the foregoing reasons, the Court declines to approves the parties' proposed settlement agreement as fair and reasonable. Because the proposed settlement agreement contains an overly broad release provision, the parties' joint request for approval is denied without prejudice. The parties may renew their requests for *Cheeks* approval and file a revised proposed settlement agreement consistent with this opinion by **May 1, 2020**. Alternatively, the parties should review *Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395 (2d Cir. 2019) and consider whether a *Cheeks* application is necessary here.

**SO ORDERED.**

Dated: April 20, 2020                *s/ Ona T. Wang*
      New York, New York            **Ona T. Wang**
                                                    United States Magistrate Judge

---

[1] Plaintiff's counsel submitted a chart indicating 12.3 hours were spent on this case. After deducting costs, Plaintiff's counsel's effective rate of pay is approximately $383 per hour. The Court finds this hourly rate is reasonable for Plaintiff's counsel here. (*See* ECF 15-4 at 4).